UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| TRACEY A. M.[1], | |
| Plaintiff, | |
| v. | CASE NO. 2:24-CV-241-SJF |
| FRANK BISIGNANO, COMMISSIONER OF SOCIAL SECURITY[2], | |
| Defendant. | |

**OPINION and ORDER**

Plaintiff Tracey M. ("Ms. M") seeks judicial review of the Social Security Commissioner's decision denying Ms. M's application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act"). This Court may enter a ruling based on the parties' consent pursuant to 28 U.S.C. § 636(b)(1)(B) and 42 U.S.C. § 405(g). [DE 11]. For the reasons discussed below, the Court **REMANDS** the decision of the Commissioner of the Social Security Administration ("SSA").

**I.  OVERVIEW OF THE CASE**

Ms. M filed an application for DIB on March 21, 2022, alleging disability beginning January 1, 2020. (Administrative Record 27; hereinafter "AR"). She was denied initially, on reconsideration, and after a hearing before an administrative law judge ("ALJ"). (*Id.*). The ALJ issued an unfavorable decision on October 26, 2023. (AR

---

[1] To protect privacy interests, and consistent with the recommendation of the Judicial Conference, the Court refers to the plaintiff by first name, middle initial, and last initial only.
[2] Frank Bisignano became the Commissioner of Social Security on May 6, 2025. Under Rule 25(d) of the Federal Rules of Civil Procedure, Frank Bisignano is substituted as the defendant in this suit.

24). Ms. M then requested further review of the ALJ's decision, and the Appeals Council denied this request on May 15, 2024. (AR 1). Thus, the ALJ's decision became the final decision of the Commissioner. *Fast v. Barnhart*, 397 F.3d 468, 470 (7th Cir. 2005).

Ms. M filed suit in this court on July 12, 2024. This court has jurisdiction under 42 U.S.C. § 405(g).

## II.    APPLICABLE STANDARDS

### A.    Disability Standard

To qualify for DIB and SSI, a claimant must be "disabled" as defined under the Act. A person is disabled under the Act if "he or she has an inability to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). Substantial gainful activity is defined as work activity that involves significant physical or mental activities done for pay or profit. 20 C.F.R § 404.1572.

The Commissioner's five-step sequential inquiry in evaluating claims for DIB under the Act includes determinations of: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant's impairments are severe; (3) whether any of the claimant's impairments alone or in combination, meet or equal one of the Listings in Appendix 1 to Subpart P of Part 404; (4) whether the claimant can perform his past relevant work based upon his Residual Functional Capacity ("RFC"); and, if not, (5) whether the claimant is able to perform other work. 20 C.F.R. §§ 404.1520. The claimant bears the burden of proof at every step except Step Five, where the burden

of proof shifts to the Commissioner. *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000), as amended (Dec. 13, 2000).

      **B.**      **Standard of Review**

The Court has authority to review a disability decision by the Commissioner pursuant to 42 U.S.C. § 405(g). But this Court's role in reviewing social security cases is limited. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). The question on judicial review is not whether the claimant is disabled; rather, the Court considers whether the ALJ used "the correct legal standards and [whether] the decision is supported by substantial evidence." *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2014) (citing *Simila v. Astrue*, 573 F.3d 503, 513 (7th Cir. 2009)). Substantial evidence must be "more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). Substantial evidence has also been understood as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); see *Summers v. Berryhill*, 864 F.3d 523, 526 (7th Cir. 2017). The Supreme Court has also noted that "substantial evidence" is a term of art in administrative law, and that "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high" in social security appeals. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). The Court reviews the entire administrative record to determine whether substantial evidence exists, but it may not reconsider facts, reweigh the evidence, resolve conflicts of evidence, decide questions of credibility, or substitute its judgment for that of the ALJ. *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004).

On the other hand, an ALJ's decision cannot stand if it lacks evidentiary support or inadequately discusses the issues. *Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). At a minimum, the ALJ must articulate her analysis of the record to allow the reviewing court to trace the path of her reasoning and to be assured the ALJ has considered the important evidence in the record. *Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002). The ALJ need not address every piece of evidence in the record so long as she provides a glimpse into the reasoning behind her analysis to build the requisite "logical bridge" from the evidence to her conclusions. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). If there is evidence that contradicts a finding of no disability, however, the ALJ must confront it and explain why it was rejected. *Moore v. Colvin*, 743 F.3d 1118, 1123 (7th Cir. 2014)(citing *Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004)).

If the ALJ's decision is not supported by substantial evidence, remand is typically the appropriate remedy. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005). On the other hand, "[a]n award of benefits is appropriate only where all factual issues have been resolved and the record can yield but one supportable conclusion." *Id.* (quoting *Campbell v. Shalala*, 988 F.2d 741, 744 (7th Cir. 1993)).

**III.   DISCUSSION**

    **A.   Summary of the ALJ's Decision Denying Benefits**

Ms. M's hearing before the ALJ took place on September 19, 2023. (AR 27). Ms. M appeared in person and was represented by two attorneys. On October 26, 2023, the ALJ issued a written decision finding that Ms. M was not disabled from January 1, 2020,

4

through June 30, 2022, the date last insured, conducting the requisite five-step analysis for evaluating claims for disability benefits. 20 C.F.R. § 404.1520. (AR 41).

At Step One, an ALJ's inquiry focuses on whether a claimant is engaging in substantial gainful activity. Here, the ALJ determined that Ms. M had not engaged in substantial gainful activity since her alleged onset date of January 1, 2020. (20 C.F.R. § 404.1571 et seq., and § 416.971 et seq.). (AR 29).

At Step Two, an ALJ's inquiry focuses on whether the claimant's impairments are severe. For an impairment to be considered severe, an impairment or combination of impairments must significantly limit the claimant's ability to perform basic work-related activities. 20 C.F.R. § 404.1521. The ALJ concluded that Ms. M suffered from the following severe impairments: systemic lupus erythematous, asthma, Raynaud's disease, osteoarthritis, Sjorgen's disorder, undifferentiated connective tissue disorder, major depressive disorder, generalized anxiety disorder, migraines, and morbid obesity (AR 29). The ALJ thus concluded that these medically determinable impairments significantly limit Ms. M's ability to perform basic work activities as required by SSR 85-28. On the other hand, an impairment is considered non-severe when the medical evidence establishes only a slight abnormality or combination of slight abnormalities that would have no more than a minimal effect on the claimant's ability to perform basic work functions. *See, e.g.*, 20 C.F.R. § 404.1522; S.S.R. 85-28, 1985 WL 56856 (Jan. 1, 1985). The ALJ found that Ms. M had the following nonsevere impairments: pineal cyst in brain, an eyelid neoplasm, celiac's disease, degenerative joint disease of the right

knee, right ankle impingement syndrome, and sprain of the anterior talofibular ligament of the left ankle. (AR 30).

The ALJ concluded at Step Three that Ms. M does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. § 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926). The ALJ considered Listings 3.30, 14.02, 14.09, 11.02, 12.06, and SSRs 19-2p and 19-4p. Accordingly, before moving on to Step Four, the ALJ proceeded to determine whether Ms. M can perform her past relevant work based on her residual functional capacity ("RFC").

A claimant's RFC includes limitations for all medically determinable impairments, including non-severe impairments. 20 C.F.R. § 404.1545(a)(2). The RFC is the most that an individual can do despite her limitations. 20 C.F.R. § 404.1545(a). To determine a claimant's RFC, the ALJ must consider the claimant's symptoms, their intensity, persistence, and limiting effects, and the consistency of these symptoms with the objective medical evidence and other evidence in the record. 20 C.F.R. § 404.1545(a)(1). Physical exertion levels in an RFC are classified as either sedentary, light, medium, heavy, or very heavy. 20 C.F.R. § 404.1567. The ALJ concluded that Ms. M retained the RFC to perform less than the full range of light work as defined in 20 C.F.R. 404.1567(b). The ALJ thus determined that Ms. M could:

> perform light work as defined in 20 CFR 404.1567(b) except where the claimant can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; but never climb ladders, ropes, and scaffolds. The claimant must avoid exposure to extreme heat/cold, wetness, humidity, dust, fumes, gases, odors, and poor ventilation; and must

6

> avoid exposure to hazards such as unprotected heights and moving mechanical parts. The claimant can understand, remember, and carry out simple instructions; and use judgment to make simple work related decisions. The claimant can have occasional interactions with coworkers, supervisors, and the general public.

Based on this RFC, at Step Four, the ALJ found that Ms. M was unable to perform her past relevant work as a legal secretary, receptionist, and administrative clerk. (AR 39). Accordingly, the ALJ moved on to last step in the five-step sequential analysis to determine whether Ms. M could perform other work.

At Step Five, the burden of proof shifts to the Commissioner, who must "provid[e] evidence that demonstrates that other work exists in significant number in the national economy that [the claimant] can do, given his residual functional capacity and vocational factors." 20 C.F.R. § 404.1560(c)(2); *see also Liskovitz v. Astrue*, 559 F.3d 736, 742-43 (7th Cir. 2009). The ALJ found that, while Ms. M could not perform any past relevant work, she retained the RFC to perform the representative jobs of cleaner/housekeeping (177,876 jobs nationally); marker (136,785 jobs nationally); and routing clerk (117,925 jobs nationally).

Finding that Ms. M could make an adjustment to other work that existed in significant numbers in the national economy, the ALJ determined that Ms. M was not under a disability, as defined in the Act, from her alleged onset date of January 1, 2020, to her date last insured of June 30, 2022. (AR 41).

### B. Issues for Review

Ms. M raises three overarching arguments in support of remand. First, Ms. M contends that the ALJ failed to assess work limits associated with her fatigue. Next, Ms.

M maintains that the ALJ erred by not following the requirements of Social Security Ruling ("SSR") 96-8p, which requires that the RFC assessment "include[s] a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts [] and nonmedical evidence." [DE 14 at 6]. As part of this argument, Ms. M specifically challenges the ALJ's finding that she could perform light work despite her treating specialist and primary provider opining that she was precluded from full-time work. She also alleges that the ALJ failed to adequately account for her severe migraines or her moderate limitation in concentration, persistence, or pace, or to adequately explain the RFC findings that she could be on her feet for six hours in a workday and had limitations regarding the use of her hands. Finally, Ms. M argues that the ALJ did not set forth a legally sufficient symptoms assessment under SSR 16-3p and other applicable regulations, specifically raising the ALJ's discussion of Ms. M's migraine treatment, limited daily activities, and other specialized treatment. [*Id.* at 14].

In response, the Commissioner contends that the ALJ's decision was detailed and well-supported, addressing all of Plaintiff's impairments and providing support for the ALJ's requisite RFC findings. The Commissioner also directly responds to Ms. M's specific challenges.

For the reasons explained below, Ms. M's first argument—that the ALJ failed to assess work limitations associated with her symptoms of fatigue—warrants remand for further administrative proceedings. As this first argument provides a basis for remand, the Court will not reach Ms. M's other arguments in support of remand.

8

C.  **Discussion**

1.  **RFC Assessment**

An RFC is "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." SSR 96-8p. "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." *Id.* The RFC is the *most* someone "can do despite their mental and physical limitations." 20 C.F.R. § 404.1545(a)(1) and § 416.945(a)(1); SSR 96-8p(5) (emphasis added). The RFC is crafted based on "all the relevant evidence in the case record, including information about the individual's symptoms and any 'medical source statements' – i.e., opinions about what the individual can still do despite his or her impairment(s) – submitted by an individual's treating source or other acceptable medical sources." SSR 96-8p.

"The RFC assessment must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence." SSR 96-8p. Thus, when crafting a claimant's RFC, an ALJ must follow a two-step sequential process to determine whether a claimant's symptoms can be accepted as consistent with objective medical evidence and other evidence. First, the ALJ must determine whether there are underlying medically determinable mental or physical impairments that could reasonably be expected to produce the claimant's pain or symptoms. Second, if there are underlying physical or mental impairment(s) that could reasonably be expected to produce the claimant's pain or other symptoms, the ALJ must then evaluate the intensity,

9

persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's work-related activities. *See* 20 C.F.R. § 416.929(a). The ALJ evaluates the intensity, persistence, and limiting effects of symptoms by considering a claimant's subjective statements and complaints related to their symptoms and pain, as well as any description medical sources and other nonmedical sources provide about how these symptoms affect a claimant's ability to work. *See* 20 C.F.R. § 404.1529(a).

The ALJ must also consider "whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between [a claimant's] statements and the rest of the evidence . . . " 20 C.F.R. § 404.1529(c)(4). Accordingly, a claimant's alleged symptoms are determined to diminish their capacity to work "to extent that [the claimant's] alleged functional limitations and restrictions due to symptoms, such as pain, can reasonably be accepted as consistent with the objective medical and other evidence." 20 C.F.R. § 404.1529(c)(4).

The "RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts." SSR 96-8p. This "analysis must say enough to enable a review of whether the ALJ considered the totality of a claimant's limitations." *Lothridge v. Saul*, 984 F.3d 1227, 1233 (7th Cir. 2021).

### 2. The ALJ's Assessment of Ms. M's Fatigue

As stated, Ms. M's first argument is that the ALJ failed to assess work limitations related to her fatigue, which Ms. M explains is a common symptom of lupus, connective tissue disease, Sjorgen's disorder, and depression, all of which the ALJ found to be

10

severe impairments. Here, the ALJ acknowledged that fatigue was one of Ms. M's symptoms, noting that Ms. M

> testified that she could not work due to her symptoms that included migraines, pain, and exhaustion. . . . [S]he would sleep for up to four hours at a time, and that she need to nap during the day. [She] testified that her fatigue would affect her activities of daily living . . . .[S]he testified that her "lupus flares" were very unpredictable, and that she would experience a lot of pain, body aches, and no energy during a flare. These "flares" would occur two to three times a month.

(AR 34). The ALJ also observed Ms. M's statements that her fatigue affected her daily living, but also noted that "she testified that she was able to get up, take her medications, take a shower, feed and care for her cats, prepare meals, and check on her parents with whom she lived. She could do dishes, vacuum, dust, clean the bathroom; but the claimant testified that she had difficulty with other tasks like laundry and taking the garbage out." (*Id.*). The ALJ then found that Ms. M's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [her] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (AR 34)

The ALJ proceeded to summarize the medical evidence in the record and to discuss the persuasiveness of the medical opinions in the record. As stated, based on this evidence, the ALJ determined that Ms. M could:

> perform light work as defined in 20 CFR 404.1567(b) except where the claimant can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; but never climb ladders, ropes, and scaffolds. The claimant must avoid exposure to extreme heat/cold, wetness, humidity, dust, fumes, gases, odors, and poor ventilation; and must avoid exposure to hazards such as unprotected heights and moving mechanical parts. The claimant can understand, remember, and carry

11

> out simple instructions; and use judgment to make simple work related decisions. The claimant can have occasional interactions with coworkers, supervisors, and the general public.

(AR 33). The ALJ then explains this RFC determination by stating that

> The claimant has the above residual functional capacity assessment, which is supported by the medical evidence. The claimant's physical impairments that include systemic lupus erythematous, migraines, and obesity are considered in the residual functional capacity by placing the claimant at a restricted range of light work, with postural and environmental limitations. The claimant's mental impairments are considered in [the] residual functional capacity by limiting her to understanding, remembering, and carrying out simple instructions; using judgment to make simple work-related decisions; and having occasional interactions with coworkers, supervisors, and the general public.

(AR 39).

As stated, Ms. M contends that, even though the ALJ acknowledged her fatigue and her fatigue was "repeatedly documented" in the record, the ALJ did not explain whether, or how, the RFC accommodates her fatigue. [DE 14 at 5, citing AR 436, 443, 450, 470, 473, 619, 625, 756-57, 761, 764, 770, 780, 786, 790, 794, 798, 804, 808, 812, 1040, 1043, 1051, 1083, 533, 571, 621.]. In response, the Commissioner does not reference any discussion by the ALJ regarding Ms. M's fatigue, instead contending first that Ms. M's arguments about her fatigue "rest heavily on her own subjective reports" such that remand is not required. [DE 20 at 3]. But "[s]ubjective complaints of fatigue . . . must be considered and addressed by the ALJ even if they are not part of the 'objective medical evidence' in the file." *Kratzman v. Bisignano*, No. 1:24-CV-206-AZ, 2025 WL 1813195, at *4 (N.D. Ind. July 1, 2025) (citing *Lothridge*, 984 F.3d at 1234). The Commissioner also

12

maintains that the decision should be affirmed because "the ALJ acknowledged Plaintiff's complaints of fatigue, which was all that was required of her." [DE 20 at 3].[3]

This latter response, however, only serves to highlight the error here. The ALJ acknowledged that Ms. M complained of fatigue. The ALJ then stated that Ms. M's "statements regarding the intensity, persistence, and limited effects of her symptoms"— which presumably included her allegations of fatigue— "are not entirely consistent the medical evidence and other evidence in the record for the reasons explained in this decision." (AR 34). Despite this statement, the ALJ failed to discuss Ms. M's fatigue again in the decision—in either the discussion of the medical evidence or in the RFC assessment. "Merely acknowledging Plaintiff's fatigue without analysis is insufficient." *Rebecca A. v. Kijakazi*, No. 21-cv-3185, 2022 WL 16856394, at *3 (N.D. Ill. Nov. 10, 2022). The ALJ never explains whether the assessed RFC limitations accommodate her fatigue or, in the alternative, articulate reasons why the ALJ rejected her complaints of fatigue. This warrants remand. *See, e.g.*, *Kratzman*, 2025 WL 1813195, at *4; *Tina L. v. Kijakazi*, No. 1:22CV452, 2023 WL 6805872, at *4 (N.D. Ind. Oct. 16, 2023)("Plaintiff often reported fatigue. . . . However, the ALJ provided no analysis of how Plaintiff's fatigue or need to nap would affect her ability to work."); *Black v. Comm'r of Soc. Sec.*, No. 4:22-CV-49 DRL-JEM, 2023 WL 6365441, at *5 (N.D. Ind. Sept. 29, 2023)("[T]he administrative decision acknowledges [the claimant's] fatigue but never addresses whether this limitation has

---

[3] The Commissioner also argues that it is "not unreasonable to assume that [the] level of fatigue [alleged by Ms. M] would be observed by least one of [her] medical providers." [DE 20 at 4]. But the ALJ never made this statement to explain why he discounted Ms. M's allegations of fatigue. The Court is also concerned that this statement is an invitation to "reconsider facts" or "decide questions of credibility" which the Court cannot do in its review. *See Young*, 362 F.3d at 1001.

been accounted in her assessed ability to stand or walk four[] hours in a workday and thereby accounted in the RFC.") Indeed, "the ALJ has to explain her decision, whether it's to reject claims of fatigue or to accept them and account for them – logically – in her RFC finding." *Lopez v. Berryhill*, 340 F. Supp. 3d 696, 701 (N.D. Ill. 2018).

It is true that "[a]n ALJ need not always explicitly link a claimant's RFC with each symptom to be addressed." *Marilyn G. v. O'Malley*, No. 22-CV-5373, 2024 WL 809088, at *2 (N.D. Ill. Feb. 27, 2024). None of the assessed RFC limitations—such as the ALJ's limitation to only simple instructions and simple work-related decisions—appear to clearly address fatigue. *See, e.g.*, *Allensworth v. Colvin*, 814 F.3d 831, 835 (7th Cir. 2016) (remanding where an ALJ restricted "the plaintiff to simple work because of his sleep apnea, but did not explain why someone with hypersomnia should be able to stay awake at work just because it's simple work"). *See also Thompson v. Saul,* No. 2:20-CV-114 DRL, 2021 WL 2660223 (N.D. Ind. June 29, 2021) ("Although the ALJ limited [the claimant] to simple work and few social interactions, she didn't explain why these limitations would accommodate [the claimant's] fatigue.") *and Stroud v. Berryhill*, No. 2:17-CV-00067, 2018 WL 4501674, at *6 (N.D. Ind. Sept. 19, 2018) ("[T]here is no evidence that limiting the Plaintiff to simple, routine, and repetitive tasks would address the Plaintiff's fatigue issues and the Plaintiff's argument that her fatigue would affect her ability to work"). The Court must still be able to trace the path of the ALJ's reasoning, which it cannot do here. *Scott,* 297 F.3d at 595.

The Commissioner also disputes that remand is required by contending that Ms. M failed to show how her fatigue specifically limited her ability to work. While a

14

claimant must present evidence of any medically determinable impairments, the ALJ bears responsibility for crafting a claimant's RFC limitations. *See Robert P. v. Kijakazi*, No. 3:21CV305, 2022 WL 831870, at *10 (N.D. Ind. Mar. 21, 2022) ((explaining that the claimant was not required to "to furnish direct evidence that his impairments, for example, would allow him to sit specifically for one hour per day, or lift 10 pounds occasionally") (citing 20 C.F.R. § 404.1520 and 20 C.F.R. § 404.1513)). In doing so, the ALJ's RFC assessment must build an accurate and logical bridge between the evidence and the resulting RFC limitations. If the ALJ fails to do so, the Court is left to "speculate as to the basis for the RFC limitations" which it cannot do through its limited review. *See Moore*, 743 F.3d at 1127-28.

    Nor can the Court find this harmless. As Ms. M contends, during her administrative hearing, the VE testified that:

> Q  And, in your experience, what are the off-task tolerances that are generally tolerated by an employer throughout the work day?
>
> A  Employers have, in terms of off-task behavior, in my opinion, a person needs to remain on task 85 to 90% of the work day, excluding typical breaks.

(AR 79). If Ms. M's complaints of fatigue were credited and incorporated into her RFC, it could exceed off-task tolerances, supporting a finding of disability. *See, e.g.*, *Jennie T. v. O'Malley*, No. 3:22-CV-846-JVB, 2024 WL 1554096, at *3 (N.D. Ind. Mar. 6, 2024); *Marilyn G.*, 2024 WL 809088, at *3. Thus, the Court finds that remand is appropriate here.

As stated, Ms. M has raised other arguments in support of remand. The ALJ will have the opportunity to fully discuss and reevaluate the rest of Ms. M's allegations on remand. This is not to say that there are no other errors in the ALJ's decision, but the Court need not discuss them based on the issues identified in the ALJ's assessment of the above RFC limitations.

IV. **CONCLUSION**

For these reasons, the Court now **REMANDS** this action to the SSA for further administrative proceedings consistent with this opinion.

**SO ORDERED** this 6th day of February 2026.

    s/Scott J. Frankel
    Scott J. Frankel
    United States Magistrate Judge